IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CRIMINAL ACTION |
| | : | |
| v. | : | NO: 1:10-CR-53-CAP-ECS |
| | : | |
| CORNELL BRUMFIELD. | : | |

**REPORT AND RECOMMENDATION OF**
**UNITED STATES MAGISTRATE JUDGE**

**I.**
**Introduction**

Pending before the Court is Defendant's motion to suppress evidence. [Doc. No. 68]. The Court held an evidentiary hearing on Defendant's motion on June 20, 2011. [Doc. No. 91]. Thereafter, on July 29, 2011, Defendant filed his post-hearing brief. [Doc. No. 94]. The government filed its response on August 12, 2011. [Doc. No. 95]. No reply having been filed, this matter is now ripe for decision. For the reasons addressed herein, the Court **RECOMMENDS** that Defendant's motion to suppress [Doc. No. 68] be **DENIED**.

**II.**
**Factual Background**

After reviewing the transcript of the June 20, 2011, evidentiary hearing and the parties' post-hearing briefs, the Court derives the following relevant facts:

On October 13, 2009, at approximately 11:00 p.m., Officer Carlos Mathis, of the Cobb County Police Department, traveled on

South Cobb Drive behind a vehicle operated by Defendant. (Transcript of June 20, 2011, Evidentiary Hearing (hereinafter "T.") at 5, 12). While waiting at a traffic light at the intersection of South Cobb Drive and Highland Parkway, Officer Mathis performed a routine check through NCIC on the vehicle's tag number. (T. at 5, 13). The tag check revealed that the vehicle driven by Defendant did not have insurance. (T. at 5, 13, 24). Officer Mathis then initiated a traffic stop, and Defendant pulled the vehicle into an adjacent Shell service station. (T. at 5, 14). Once stopped, Officer Mathis exited his vehicle and approached Defendant, during which time he noticed an additional male passenger seated in the front. (T. at 5-6). Officer Mathis explained to Defendant the reason for the stop and asked both men for identification. (T. at 5, 14). After obtaining driver's licenses from both men, Officer Mathis went back to his patrol car. (T. at 5, 14).

Before checking the driver's licenses in the NCIC system, Officer Mathis requested assistance from another unit. (T. at 17, 21-22, 25; Def.'s Ex. 2). Officer Mathis then ran the licenses through NCIC and discovered that Defendant had an active arrest warrant from Fulton County. (T. at 5-6, 14, 17). Officer Mathis then waited for assistance and, after two officers arrived, he walked back to the vehicle driven by Defendant, informed Defendant of the outstanding warrant, and placed Defendant under arrest. (T.

at 6, 17). Defendant was removed from the vehicle and placed in the backseat of Officer Mathis's patrol car. (T. at 6). Officer Mathis returned the passenger's driver's license to the passenger and did not arrest him because there were no other warrants or outstanding charges. (T. at 6-7, 17-18).

Because the vehicle was uninsured and neither of the two men was its owner, Officer Mathis impounded the vehicle pursuant to Cobb County impoundment policy and procedure. (T. at 7-9; Gov.'s Ex. 1, at 2). As part of the impoundment process, Officer Mathis conducted an on-scene inventory search of the vehicle. The inventory search revealed a loaded Glock pistol in the vehicle's trunk and a police scanner on the passenger seat floor board. (T. at 7, 19). Officer Mathis then conducted a criminal history check on Defendant, which revealed prior felony convictions, including bank robbery. (T. at 9).

### III.
### Discussion

This case presents the question of whether evidence in the form of the Glock pistol was obtained as a result of an illegal arrest. Defendant contends that the arrest was illegal, and that, as a result, the impoundment and the inventory search were also illegal, thus tainting the evidence found in the trunk as "fruit of the poisonous tree." <u>Wong Sung v. United States</u>, 371 U.S. 471, 488

(1963); see also United States v. Epps, 613 F.3d 1093, 1099 (11th Cir. 2010).  In support of his motion, Defendant argues that the officers actually arrested him "before Officer Mathis learned information regarding an outstanding warrant from Fulton County," [Def. Br. at 6], which makes the arrest an illegal seizure because it was lacking probable cause. [Def.'s Br. at 5-6].  The Government counters that the stop of Defendant's vehicle was justified under Terry v. Ohio, 392 U.S. 1 (1968), and "the facts support at least reasonable suspicion, if not probable cause to briefly detain and question [D]efendant" before his subsequent arrest on the warrant. [Gov.'s Br. at 5].

**A. Defendant's Traffic Stop was not an Illegal Arrest**

   **1. The Traffic Stop**

As an initial matter, Officer Mathis's stop of the vehicle driven by Defendant was valid under Terry v. Ohio.  In Terry, the Supreme Court held that a police officer may conduct a brief, warrantless, investigatory stop of an individual "where [he] observes unusual conduct which leads him to reasonably conclude in light of his experience that criminal activity may be afoot." 392 U.S. at 30; see also United States v. Hunter, 291 F.3d 1302, 1305-1306 (11th Cir. 2002).  To justify such a stop, the officer must point to specific and articulable facts, together with rational inferences from those facts, that reasonably suggest that criminal

4

activity has occurred or is imminent. <u>Terry</u>, 392 U.S. at 21; <u>United States v. Griffin</u>, 109 F.3d 706, 707 (11th Cir. 1997). In determining whether reasonable suspicion existed in a particular case, the Court must look at the totality of the circumstances. <u>United States v. Arvizu</u>, 534 U.S. 266, 274 (2002).

Here, Officer Mathis initiated the traffic stop of the vehicle driven by Defendant after a license plate check revealed the vehicle did not have insurance. Defendant offers no argument to suggest the initial stop was not justified and even acknowledges it occurred because Officer Mathis "was provided information that the vehicle driven by Mr. Brumfield did not have insurance." [Def.'s Br. at 1-2]. Thus, under <u>Terry</u>, Officer Mathis had reasonable suspicion, if not probable cause, to stop Defendant's vehicle for the insurance violation.

**2. Defendant's Detention After the Stop**

Defendant argues, however, that he was illegally placed under arrest after the traffic stop but *before* Officer Mathis learned of Defendant's outstanding warrant. [Def.'s Br. at 3, 6]. Under <u>Terry</u>, an investigative stop that is justifiable at its inception must also be "related in scope to the circumstances which justified the interference in the first place." <u>Terry</u>, 392 U.S. at 19-20. Whether Defendant's seizure after the stop remained consistent with <u>Terry</u> or amounted to an arrest "depends on the nature and degree of

5

intrusion under the totality of the circumstances." <u>United States v. Diaz-Lizaraza</u>, 981 F.2d 1216, 1221 (11th Cir. 1993). Factors to consider in distinguishing arrests from <u>Terry</u> stops include: "(1) the law enforcement purpose served by the detention; (2) the diligence with which the officers pursued the investigation; (3) the scope and intrusiveness of the investigation; and (4) the duration of the detention." <u>United States v. Street</u>, 472 F.3d 1298, 1306 (11th Cir. 2006) (quoting <u>United States v. Hardy</u>, 855 F.2d 753 (11th Cir. 1988)).

    In the instant case, Officer Mathis's actions after the stop did not amount to an illegal arrest of Defendant. After his initial stop of the uninsured vehicle, Officer Mathis explained to Defendant the reason the vehicle was pulled over. In this brief period of questioning, Officer Mathis learned that neither Defendant nor his passenger owned the vehicle. Officer Mathis asked for identification from both men, and he performed a routine check on NCIC that revealed an outstanding warrant for Defendant's arrest. All of these activities are permissible by an officer engaged in a routine traffic stop. <u>See, e.g.</u>, <u>United States v. Purcell</u>, 236 F.3d 1274, 1277-78 (11th Cir. 2001)(discussing the well established rule that officers conducting a traffic stop may prolong the detention to investigate the driver's license and vehicle registration); <u>United States v. Simmons</u>, 172 F.3d 775, 778 (11th Cir. 1999)

(stating that police may conduct a variety of checks on the driver and his car after a valid stop, including "questioning the driver about the traffic violation ... and running a computer check for outstanding warrants"); Hardy, 855 F.2d at 755, 757 (discussing officers' check for warrants after traffic stop); United States v. Geboyan, 367 F.App'x 99 (11th Cir. 2010) (discussing reasonableness of detaining a defendant for twenty minutes to perform a driver's license and background check on vehicle's occupants).

Defendant's only argument in support of illegality speculates that because Officer Mathis called for assistance before learning of Defendant's outstanding arrest warrant, "the logical conclusion" is that additional officers were already on scene and that Defendant was already arrested. [Def.'s Br. at 3, 6]. With nothing more, Defendant's argument is not persuasive. Nothing in the record indicates the stop was prolonged, unreasonably delayed, or executed for any purpose other than the legitimate need to enforce state traffic law. Defendant was not handcuffed or placed in Officer Mathis's vehicle at any point before it was determined that an active arrest warrant existed. [T. at 5-6]. In short, the totality of the circumstances shows overwhelmingly that Officer Mathis's post-stop actions were reasonably related in scope to the reasons for the initial stop; the fact that two officers arrived on the scene and assisted him does not fundamentally change the nature and

7

degree of that intrusion. See Terry, 392 U.S. at 19-20; Diaz-Lizaraza, 981 F.2d at 1221; Street, 472 F.3d at 1306. Thus, the Court finds that the brief period from immediately after the stop until Defendant's arrest on the outstanding warrant constituted a valid Terry stop and not an illegal arrest.

**B.  The Arrest and Vehicle Search**

To the extent Defendant may be challenging his arrest insofar as it was based upon the outstanding arrest warrant, the Court further finds that Officer Mathis clearly had probable cause to make that arrest. An arrest is a seizure within the Fourth Amendment and is therefore subject to that Amendment's reasonableness requirement. California v. Hodari D., 499 U.S. 621, 624 (1991); McClish v. Nugent, 483 F.3d 1231, 1238 (11th Cir. 2007). Although an arrest in the home requires a warrant, a public arrest is justified where probable cause exists. United States v. Watson, 423 U.S. 411, 417 (1976); McClish, 483 F.3d at 1238. A valid arrest warrant, by definition, provides probable cause to arrest. See Chapman v. City of Atlanta, 192 F.App'x 922, 924 (2006) (explaining that a valid warrant justifies arrest and detention) (citing Baker v. McCollan, 443 U.S. 137, 144-45 (1979)). Where an officer is not in possession of an outstanding warrant, he "must inform the defendant of the warrant's existence and of the offense charged and, at the defendant's request, must show the warrant to the defendant as soon

8

as possible." Fed. R. Crim. P. 4(c)(3)(A); see also <u>United States v. Bremby</u>, 321 F.App'x 892, 894 (11th Cir. 2009) (explaining that officer who arrested defendant pursuant to outstanding arrest warrant did not violate federal law by making the arrest without having the warrant in hand, since the arrest was made pursuant to a valid arrest).

As previously discussed, Defendant was not under arrest at any point before Officer Mathis became aware of the outstanding warrant. However, when Officer Mathis learned of the valid, outstanding warrant for Defendant's arrest, he had probable cause to arrest Defendant. <u>McClish</u>, 483 F.3d at 1238; <u>Bremby</u>, 321 F.App'x at 894. Additionally, once Officer Mathis determined that Defendant was a convicted felon in possession of a firearm, he also had probable cause to arrest Defendant on that charge. Because Officer Mathis had probable cause to arrest Defendant, and because Defendant was told of the outstanding warrant when he was arrested, the Court finds that no illegal seizure occurred at any time during this transaction. Defendant's motion to suppress based on lack of probable cause to arrest is without merit.

Defendant's only challenge to the search of the vehicle and the seizure of the pistol is that it was the product of an illegal arrest. [Def.'s Br. 6-7]. Defendant is simply grasping at straws. Although "[e]vidence seized after an illegal seizure should be

9

suppressed as 'fruit of the poisonous tree,'" United States v. Davis, 313 F.3d 1300, 1302 (11th Cir. 2002) (citing Wong Song, 371 U.S. at 488), no illegal arrest or illegal seizure occurred in the instant case. Furthermore, the "policies behind the warrant requirement are not implicated in an inventory search, nor is the related concept of probable cause." Colorado v. Bertine, 479 U.S. 367, 371 (1987). Therefore, the Court finds that Defendant's motion to suppress evidence should be **DENIED**.

## IV.
## Conclusion

For the reasons stated above, the Court concludes that Defendant's constitutional rights were not violated when the officers stopped and subsequently arrested him on October 13, 2009. Having found the officers' actions to be consistent with the Fourth Amendment, the Court **RECOMMENDS** that Defendant's motion to suppress [Doc. No. 68] be **DENIED**.

**SO REPORTED AND RECOMMENDED**, this 19th day of September, 2011.

*S/ E. Clayton Scofield III*
E. Clayton Scofield III
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)