## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| CORNELL DESMOND BRUMFIELD, | : | MOTION TO VACATE |
| BOP ID 24745-034, | : | 28 U.S.C. § 2255 |
| Movant, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 1:15-CV-1969-CAP-CMS |
| | : | |
| UNITED STATES OF AMERICA, | : | CRIMINAL ACTION NO. |
| Respondent. | : | 1:10-CR-53-1-CAP-CMS |

_____          _____

| | | |
|---|---|---|
| RONN DARNELL STERLING, | : | MOTION TO VACATE |
| BOP ID 04119-043, | : | 28 U.S.C. § 2255 |
| Movant, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 1:15-CV-273-CAP-CMS |
| | : | |
| UNITED STATES OF AMERICA, | : | CRIMINAL ACTION NO. |
| Respondent. | : | 1:10-CR-53-2-CAP-CMS |

## FINAL REPORT AND RECOMMENDATION

The two matters listed in the caption are before the Court on *pro se* motions to vacate, set aside or correct sentences pursuant to 28 U.S.C. § 2255 filed by federal inmates Cornell Desmond Brumfield and Ronn Darnell Sterling. *See* [234] & [243]. These motions were referred to me in March 2017, after the Honorable Charles A. Pannell, Jr. denied Brumfield and Sterling's supplemental § 2255 motions seeking relief pursuant to

*Johnson v. United States*, 135 S. Ct. 2551 (2015).  *See* [264], [266], [271] & [272].  For the reasons that follow, I **RECOMMEND** that Brumfield and Sterling's initial § 2255 motions be **DENIED** and that Certificates of Appealability be **DENIED**.

## I.   BACKGROUND

The factual and procedural history is as follows:

In the mid-1990s, a masked gunman brandishing a silver handgun and an accomplice vaulted over the counters of a First Enterprise Bank branch in Oklahoma and emptied the tellers' cash drawers before fleeing the bank to rendezvous with a driver stationed nearby in a getaway car. The accomplice, "a confessed participant in the robbery and a witness for the government," testified at trial against Brumfield and Sterling.  *United States v. Sterling*, No. 96-6008, 1996 U.S. App. LEXIS 30914, at *3 (10th Cir. 1996).  Both men were subsequently convicted in the United States District Court for the Western District of Oklahoma for aiding and abetting one another pursuant to 18 U.S.C. § 2 in committing the substantive crimes of armed bank robbery in violation of 18 U.S.C. § 2113(a) & (d) and possession of a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1).  *See United States v. Sterling*, No. 5:95-CR-119 (W.D.

Okla. 1995).  Sterling was also convicted for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  *See id.*

Brumfield was sentenced to a 106-month term of imprisonment, and Sterling was sentenced to a 160-month term of imprisonment.  *See id.* When Brumfield was released from prison in 2005, jurisdiction over his probation was transferred to the Northern District of Georgia, and when Sterling was released from prison in 2009, jurisdiction over his probation was transferred to the Southern District of Mississippi.  *See id.* [188 & 208 therein].

At the trial of the criminal case listed in the caption, Brumfield's ex-wife, Rose Hansford, testified that Sterling came to stay with the couple and their three-year old daughter, Layla, in October 2009 (*i.e.*, within months after his release from prison).  *See* [201] at 143.  And Sterling's probation officer testified that this visit violated the terms of Sterling's probation, which forbade him from leaving the Southern District of Mississippi without prior permission and from associating with convicted felons (*e.g.*, Brumfield).  *See id.* at 191-93.

During the October 2009 visit, Brumfield and Sterling were stopped by police for a traffic infraction while driving a gray 2005 Dodge Stratus in

the vicinity of the Regions Bank branch located at 888 Concord Road in Smyrna, Georgia.  *See* [202] at 57-59.  Sterling possessed a police scanner. *Id.* at 59.

It is noteworthy that, earlier in October 2009, Brumfield had opened two accounts at the Regions Bank branch at 888 Concord Road, returning there multiple times to conduct very small transactions.  *Id.* at 48-50.  So far as Hansford knew, however, she and Brumfield did not "bank at Regions Bank."  *See* [201] at 144.  And an FBI agent testified that this particular branch was located at least thirty minutes away from the couple's residence in Atlanta.  *See id.* at 205.

Hansford further testified that Sterling returned to Georgia to stay with the couple and their daughter again in early January 2010.  *Id.* at 145. When Hansford left for work on the morning of January 14, 2010, Sterling, Brumfield and Layla were all at home with the couple's Dodge Stratus.  *Id.* at 146-47.  Brumfield was not working at the time, and he and Hansford were experiencing financial difficulties.  *Id.* at 157-58.

Here, it makes sense to reprint in full the United States Court of Appeals for the Eleventh Circuit's summary of what happened next:

> On January 14, 2010, a masked man vaulted over the teller counter of a Regions Bank in Smyrna, GA, and robbed the

4

bank using a silver handgun.   After emptying the tellers'
drawers, the man exited the bank and ran behind a shopping
center located behind the bank, removing his mask as he ran.
He then disappeared from the view of witnesses, who next saw
another man remove a piece of paper covering the license tag of
a vehicle while leaning over the trunk.  Based on an eyewitness's
tip, police officers located a vehicle matching the description of
the getaway car.  The car was owned and driven by Defendant
Brumfield.  Although Brumfield's daughter was in the car, the
alleged bank robber was not found.  Police officers attempted to
open the trunk of the vehicle, but they were unable to access it
either from the outside or the back seat, even though there was
evidence that the trunk previously had functioned well.
Brumfield's vehicle was then towed to the impound lot of the
Smyrna Police Department by a private wrecker truck.  Upon
arriving at the lot, the truck driver began the process of
unhooking the vehicle when he saw an individual matching the
bank robber's description lying on the side of the flatbed, next
to the open backseat door of the car.  The suspect walked away
without being apprehended.   In the trunk of the car, police
officers eventually found a bag with clothing matching the
description of the bank robber's clothing as well as a silver
firearm.   The bag of clothing had both Brumfield's and
Sterling's fingerprints, and Sterling was a major contributor of
the DNA found inside the gloves.

*United States v. Sterling*, 738 F.3d 228, 232-33 (11th Cir. 2013) (footnote

omitted).

The Regions Bank branch that was robbed was the one at 888

Concord Road.  The eyewitness who observed the robber flee from the bank

to the shopping center parking lot and who also observed another man

remove a piece of paper covering a license plate was Matthew Justice.  The

tow truck driver who observed a man matching the robber's description walk away from the Dodge Stratus inside the Smyrna Police Department's impound lot was David Herbert.

Ronald Caston, a remotely-related cousin of Sterling's who lives in Decatur, Georgia, testified that on January 14, 2010, Sterling used a stranger's phone to call, asking to be picked up a few blocks from the Smyrna police station. *See* [201] at 165-166. Sterling spent the night at Caston's house and asked the next morning to be taken back to Smyrna to retrieve a bag. *Id.* at 167. Sterling instructed Caston to "circle around the block" while Sterling retrieved his bag, rather than to idle where Sterling had asked to be let out. *Id.* Sterling then asked Caston to take him to a hotel, and he asked Caston's brother, who was riding with them, to rent a room in the brother's name because "he didn't have a[n] I.D." *Id.* at 170. While this occurred, Sterling told Caston: "They're trying to say I did something wrong. I might be in trouble, or something like that." *Id.* at 171.

Hansford testified that after the bank robbery occurred, Sterling never returned to the Brumfields' Atlanta residence. *See* [201] at 148. Hansford further testified that Sterling left behind—and never returned for—various personal belongings, including his clothes. *Id.* at 148-49. An FBI

agent testified that a second pair of dark gloves, essentially identical to the gloves found in the trunk of the Dodge Stratus along with the silver handgun, was among the belongings Sterling abandoned at the Brumfields' home.

After Hansford retrieved the Dodge Stratus from the Smyrna Police impound lot, she found a red stain on the back seat that had not previously been there. *See* [201] at 153. This stain was made by the type of red-dye that is used dye-packs intended to thwart bank robberies. *See* [202] at 30-31 & 35. And it is the same type of red-dye found on two $100 bills recovered from the shopping center parking lot that the Dodge Stratus was seen leaving shortly after the bank robbery occurred.

Brumfield and Sterling were arrested and ultimately indicted for aiding and abetting one another pursuant to 18 U.S.C. § 2 in committing the substantive crimes of (1) armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d); (2) possession of a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A) and (c)(1)(C)(i); and (3) possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) & 924(a)(2). *See* [120] (Superseding Indictment).

During pretrial proceedings, both Brumfield and Sterling sought to exclude pursuant to Federal Rule of Evidence 404 any mention of their Western District of Oklahoma convictions.   Judge Pannell denied this motion.  As the Eleventh Circuit noted:

> In a pretrial hearing, the court decided, over an objection, to admit evidence under Federal Rule of Evidence 404(b) of Sterling's and Brumfield's prior convictions for bank robbery. The convictions stemmed from a bank robbery in Oklahoma in 1995 and involved Brumfield, Sterling, and a third person. During that robbery, the criminals brandished a silver firearm, vaulted the counter of the bank, wore masks, and used a getaway driver.  At the pretrial hearing, the government sought to admit evidence of the convictions for a litany of purposes, including to show motive, intent, preparation, plan, knowledge, etc.  The court granted the government's request, ostensibly allowing the evidence for the purpose of proving motive, identity, preparation, and plan.

*Sterling*, 738 F.3d at 232-33.

Brumfield also sought to suppress the evidence recovered from the Dodge Stratus after it was impounded by the Smyrna Police.  This pretrial motion was also denied.

Sterling's behavior before and during trial is noteworthy, and it was summarized by the Eleventh Circuit as follows:

> Sterling actively participated in the pretrial hearing.  His jury trial began on January 17, 2012.  When the court called the case and addressed preliminary matters, the judge was informed by Sterling's counsel and the U.S. marshal that

Sterling did not want to have anything to do with the trial. Sterling, however, did agree to speak with the court in an interview room. The judge, court reporter, government counsel, and Sterling's attorney obliged and moved proceedings there.

The judge explained to Sterling his right to be present at trial and during the jury selection process. The judge also explained that Sterling's repeated interruptions would cause him to be labeled a disruptive defendant and removed from court. Based on Sterling's communications with his attorney and Sterling's active participation in the pretrial hearing, the judge believed that Sterling had a full understanding of what was transpiring, despite his repeated utterance of, "I do not understand what's going on. I do not accept no offers of the court."

The judge told Sterling that if he did not respond to the court's questions and if he continued to interrupt the court, these actions would be deemed a waiver of his right to be present at trial. The judge reiterated these warnings several times, but Sterling responded by repeating the same nonsensical phrases. The judge noted that Sterling likely was refusing to come to the courtroom to avoid identification by a witness, a concern that Sterling had expressed at the pretrial hearing. Finally, the judge said, "I find that you're a disruptive defendant, that you understand what I'm trying to tell you, and that you've waived your presence in the courtroom." When the court reconvened in the courtroom, the judge stated that Sterling had waived his right to be present and Sterling's attorney conceded, "in his refusal to come up here . . . he was in fact waiving his right to be up here." The trial then continued without Sterling's presence, although he was provided a live video feed of the proceedings, and his counsel was permitted to meet with him during breaks in the trial.

During the trial, the judge asked a marshal and Sterling's counsel to ensure Sterling could view the proceedings and to

remind him that he could come watch the trial in person at any time. The marshal reported back that the equipment was working properly so that Sterling could hear and view the proceedings but that he was trying to avoid watching it. After the government rested, the judge visited Sterling again. The judge advised Sterling of his right to testify and present evidence, but Sterling remained non-responsive. The court continued the trial without Sterling.

At the close of trial, the judge instructed the jury regarding the limited bases for which it could consider the evidence of prior convictions, borrowing largely from the instruction proposed by Sterling.

*Sterling*, 738 F.3d at 233-34.

The jury convicted Brumfield and Sterling on all counts. *See* [147]. "Before he was sentenced, Sterling filed a motion for a new trial, arguing that he did not waive his right to be present at the commencement of trial, [which Judge Pannell denied,] finding that Sterling voluntarily waived his right to be present at trial." *Id.* at 234.

On April 12, 2012, Judge Pannell sentenced Brumfield to a total of 363 months of incarceration, *see* [165], and Sterling to a total of 562 months of incarceration, *see* [166].

On direct appeal, both men challenged the admissibility of their 1995 convictions, Brumfield challenged the sufficiency of the evidence to convict him on the gun charge, and Sterling challenged Judge Pannell's

determination that he had voluntarily waived his right to be present. *Sterling*, 738 F.3d at 232. The Eleventh Circuit rejected all three of these arguments, and, in the course of doing so, noted that the evidence against Sterling was "overwhelming," as well. *Id.* at 239.

The Supreme Court denied Sterling's petition for a writ of certiorari in May 2014. *See Sterling v. United States*, 134 S. Ct. 2682 (2014).

This matter is now before me on the § 2255 motions filed by both men.

## II.   DISCUSSION

### A.   Applicable Legal Standards

As a threshold matter, a federal inmate is entitled to relief under § 2255 only on the grounds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).

Furthermore, "[c]ourts have long and consistently affirmed that a collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004).

11

Thus, a "district court is not required to reconsider claims of error that were raised and disposed of on direct appeal." *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000). And "[a] rejected claim does not merit rehearing on a different, but previously available, legal theory." *Id.*

Here, most of Brumfield and Sterling's asserted grounds for relief contend that they received ineffective assistance of counsel. The standard of review for these claims is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), and subsequent cases. Under *Strickland*:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In short, Brumfield and Sterling must show that their counsel acted incompetently and that this deprived them of a trial whose result is reliable.

12

## B.   <u>Brumfield's Asserted Grounds for Relief</u>

Brumfield asserts that he is entitled to have his convictions and sentence vacated for the following three reasons, each of which is quoted verbatim from his § 2255 motion and then addressed below.

> GROUND ONE:   Ineffective Assistance of Counsel regarding Fourth Amendment challenge to investigatory stop and seizure. [234] at 7.

Brumfield's first ground for relief depends on his contention that "the investigatory stop and subsequent search [of the Dodge Stratus] was the result of a <u>false incriminating</u> statement by Officer Nesbit, and not by the statements of Matthew Justice."   [234] at 7 (emphasis in original). Brumfield asserts that the "investigatory stop was the result of Officer Nesbit's false report to dispatch that witnesses said they saw the man running from the bank 'get into a Gray Dodge Stratus,'" but that "the record shows [that neither] M. Justice nor any other witness made such a statement to Nesbit." *Id.* at 8.

This is flatly contradicted by Justice's testimony at a suppression hearing, where he testified that he and other witnesses flagged down a Smyrna Police car and "[told] him [meaning Officer Nesbit], you know, we think we saw him [meaning the robber] getting into a gray, you know,

Chrysler Dodge."  [49] at 12.  On cross-examination, Justice acknowledged that, in hindsight, he had not actually seen the robber get into the Dodge Stratus, *id.* at 15, only inferred that the robber had done so, but Justice reiterated that what he had told the police in the immediate aftermath of the robbery was "we think they're in a grayish Dodge," *id.* at 16.

Thus, Officer Nesbit's report accurately recounted what Justice told him.  Brumfield's counsel did not act incompetently when he did not argue otherwise, and Brumfield was not prejudiced.  This ground for relief is meritless.

> GROUND TWO:  Defense counsel failed to object to, and seek the suppression of[,] unsubstantiated incriminating evidence resulting in pre-trial and jury trial fundamentally unfair and unreliable."  [234] at 11.

Brumfield's second ground for relief turns on his contention that his counsel provided ineffective assistance by failing to move for (and win) the exclusion of four pieces of evidence from the trial.  *See* [234] at 12.

As a general matter:  "Evidence is relevant if:  (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401.   And relevant evidence is generally admissible, unless the United States Constitution, a federal statute, the Federal Rules of Evidence, or a

14

rules prescribed by the Supreme Court provides otherwise.  *See* Fed. R. Evid. 402.

The first piece of evidence that Brumfield argues should have been excluded at trial was a statement made by Layla, his three-year-old daughter, to a police officer, that she and her father had been at the Regions Bank on the morning of January 14, 2010.  [234] at 12.  But the record is quite clear that this statement was *not* offered at trial.  There was nothing to "exclude."

The second piece of evidence is "the fact of Brumfield's 3 year old daughter being in the car during the alleged crime." [234] at 12.  While this undisputed fact may well have reflected badly on Brumfield, its disclosure did not create unfair prejudice, confuse the issues, mislead the jury, result in undue delay, waste time, or amount to the needless presentation of cumulative evidence, and there was no basis for excluding it under Federal Rule of Evidence 403.  The prosecution's argument that Brumfield brought his daughter along in his role as the getaway driver to deflect suspicion if he was stopped near the Regions Bank was reasonable and appropriate and did not constitute, as Brumfield contends, prosecutorial misconduct.

Brumfield's counsel did not act incompetently when he did not argue otherwise, and Brumfield was not prejudiced.

The third piece of evidence that Brumfield contends ought to have been excluded were two red-dye-stained $100 bills found in the shopping center parking lot where Brumfield and his daughter had been parked while the Regions Bank branch was being robbed and through which Sterling ran in order to reach their car.  Again, there was no basis for excluding this evidence under Rule 403, and, again, both parties were permitted to and did argue about the inferences that could be drawn from this evidence.

The fourth piece of evidence was the red stain found on the back seat of the Dodge Stratus after Brumfield's ex-wife retrieved the car from the Smyrna Police impound lot.  Yet again, Rule 403 provides no basis for the exclusion of this evidence, and, again, both parties were permitted to and did argue about the inferences that the jury should draw.  Brumfield's attorney, for instance, obtained an acknowledgment from the government's expert that the red-dye that caused this stain was not used exclusively in dye-packs used to deter bank robbery, but had other applications and might have come from a source other than a bank dye-pack.

Because the first piece of evidence was never admitted and the other three pieces of evidence were relevant and not subject to exclusion on any basis that Brumfield has identified, his second ground for relief is also meritless.

GROUND THREE:  Brumfield is actually innocent of all aiding and abetting counts.  [234] at 18.

In his third ground for relief, Brumfield argues that a discrepancy between the description of the firearm that Sterling used in the bank robbery in a *state* warrant issued on January 14, 2010 (as a Lorcin 9mm semi-automatic handgun) and in his *federal* superseding indictment issued on January 3, 2012 (as a Bryco Arms, Jennings Nine, 9mm pistol) necessarily implies that he is "actually innocent of all aiding and abetting counts." [234] at 18.  This argument is frivolous.

Not only does the Smyrna Police Department Property & Evidence Record dated January 14, 2010, that Brumfield himself submitted as an exhibit to his § 2255 motion, state that the gun collected in the search of the Dodge Stratus was "1 Jennings 9mm pistol w/ magazine (loaded)," [234] at 34, but as the Eleventh Circuit noted on direct appeal, "it was undisputed that the gun [offered in evidence] was in fact used during the commission of the bank robbery." *Sterling*, 738 F.3d at 239.  Thus, the Eleventh Circuit

17

observed, because "a reasonable jury could conclude that Brumfield knew that a gun would be used by Sterling in committing the crime, especially when combined with other evidence that Brumfield was involved in planning the crime over a period of months while Sterling stayed with Brumfield," there was sufficient evidence to "affirm Brumfield's convictions on all counts." *Id.* Having argued and lost this issue on direct appeal, Brumfield cannot reargue it in his § 2255 motion on the same (or a different) legal theory. *See Nyhuis*, 211 F.3d at 1343 (11th Cir. 2000).

Moreover, this is not a case in which Brumfield may pursue an "actual innocence" claim by contending that his trial resulted in a "miscarriage of justice," because he has not offered "new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Rather, Brumfield has offered only evidence that existed and was already in his possession *prior* to trial.

In short, all three of the grounds for relief advanced by Brumfield in his § 2255 motion are meritless, and he is not entitled to relief.

### C.   Sterling's Asserted Grounds for Relief

Sterling asserts that he is entitled to have his convictions and sentence vacated for the following seventeen reasons, each of which is quoted verbatim from his "Attachments to Habeas Petition," and then addressed below.

> Ground One:   During pre-trial, trial, and appeal, defense counsel Vernon Smith (hereinafter "Counsel Smith") provided ineffective assistance for failure to suppress or to object to the admission of the "brown gloves" into evidence that contained Ronn Sterling's . . . DNA, as such gloves do not connect to the bank robbery, bolstered the prosecution's case, misrepresented the evidence of the case, was highly prejudicial to Sterling, and should have been inadmissible in the trial, not misrepresented during closing arguments as being "black gloves." [243-1] at 1.

The gloves that Sterling refers to in Ground One were seized by the Smyrna Police when they searched the Dodge Stratus.  Sterling did not own the Dodge Stratus, and he denied being in it at the time the Smyrna Police stopped Brumfield on January 14, 2014.  Therefore, he lacked a reasonable expectation of privacy in the car's contents and lacked standing to seek suppression of the evidence found in it.  *See, e.g., United States v. Lee*, 586 F.3d 859, 864-65 (11th Cir. 2009) (even a "passenger[] in a private car, . . . who does not have a possessory interest in the automobile, does not have a legitimate expectation of privacy").   Sterling's counsel did not act

incompetently by failing to file a meritless suppression motion, and Sterling was not prejudiced.

Similarly, Sterling was not entitled to have the gloves that were seized during the search of the Dodge Stratus excluded as evidence at trial because they were plainly relevant and there was no valid basis for exclusion. The fact that various witnesses described the gloves worn during the bank robbery as "black," "blue," a "dark color," or "dark colored," and that one witness said "I don't recall any gloves," did not preclude the government from offering into evidence the gloves actually taken from the Dodge Stratus simply because those gloves were described on the evidence inventory report as "brown." Rather, the inconsistency allowed Sterling's attorney to dispute whether the gloves found in the Dodge Stratus were used during the robbery, an argument he made repeatedly. Sterling's counsel did not act incompetently by focusing his attention on the inconsistency in the witnesses' testimony, rather than by filing a frivolous motion to exclude the "brown" gloves, and Sterling was not prejudiced.

> Ground Two: During pre-trial, trial, and appeal, Counsel Smith provided ineffective assistance for failure to suppress[] or to object to the admission of the testimony of the DNA expert Jeanette Wentworth concerning the "brown gloves" as such testimony depicted gloves that did not connect to the bank robbery, bolstered the prosecution's case, misrepresented the

20

evidence of the case, was highly prejudicial to Sterling, and should have been inadmissible in the trial, not misrepresented during closing arguments as being "black gloves." [243-1] at 5.

With respect to Ground Two, the government's DNA expert acknowledged in the course of her testimony that Sterling was only a "major contributor" to the DNA found in the gloves recovered from the Dodge Stratus, not the sole wearer. This did not warrant the exclusion of the gloves or the expert's testimony, but rather permitted Sterling's attorney to argue to the jury that this particular evidence was ambiguous. Sterling's attorney did not act incompetently by failing to file a motion to exclude the gloves or expert testimony, but rather acted appropriately by identifying the inherent weaknesses in that testimony. Sterling was not prejudiced.

Ground Three:  During trial, Counsel Smith provided ineffective assistance for failure to cross-examine the witnesses concerning identifying the black glove, and to request/or secure DNA and forensic testing on the black glove. [243-1] at 8.

With respect to Ground Three, the record contradicts Sterling's claim that his attorney did not cross-examine witnesses concerning a black glove found in the parking lot of another bank branch on January 14, 2014. *See* [202] at 19-20.  In fact, Sterling's counsel secured an admission from the investigating officer who found that glove that he failed to turn it over to the

21

crime lab for testing.  *Id.*  There was no need for Sterling's attorney to seek further testing, when he had already developed a basis for arguing that "this" black glove, which had not been forensically connected to Sterling, was the one worn by the "real" bank robber and that the police had ignored it.  Sterling's counsel did not act incompetently by declining to seek DNA or other testing of a glove, because he had already established a basis for using the glove to argue misidentification and reasonable doubt, the themes of his defense.  *See* [202] at 168.  Sterling was not prejudiced by this.

> Ground Four:   During pre-trial and trial, Counsel Smith provided ineffective assistance for failure to secure an expert witness who[] would have testified that Sterling did not wear the hat that was confiscated from the silver Dodge.  [243-1] at 11.

With respect to Ground Four, the government's hair and fiber expert stated during *direct* examination that "[t]he hairs recovered from the hat were a Caucasian characteristic" and thus "were not consistent with coming from Ronn Sterling."  [202] at 64.  On cross-examination, Sterling's counsel drove this point home further.  *Id.* at 66-67.  On direct examination, the government's DNA expert testified that she "could not determine a major contributor or a minor contributor" to the DNA samples found on the hat, only that Sterling "cannot be excluded as a contributor," which, she further

conceded, might include any African-American, Caucasian, Southeastern Hispanic, or Southwestern Hispanic in the United States. *Id.* at 78-79. On cross-examination, Sterling's counsel drove home through the government's own DNA expert the extraordinary inconclusiveness of this testimony. *Id.* at 80-82. Again, Sterling's counsel was not incompetent for failing to secure a second expert to offer the same conclusion, and Sterling was not prejudiced.

> Ground Five:   During pre-trial and trial, Counsel Smith provided ineffective assistance for failure to investigate and to put on a defense and for failure to secure expert witnesses who[] would have re-examined and refuted the prosecution's evidence in Sterling's favor.  [243-1] at 14.

Ground Five simply repackages the arguments Sterling made in Grounds Two and Four, and it is meritless for the same reasons.

> Ground Six:   During trial Counsel Smith provided ineffective assistance for failure to cross-examine Ronald Caston as to the type of blue shirt that he saw Sterling wearing, as such blue shirt was completely different from the color and type of blue shirt that David Herbert saw the unidentified individual wearing in the impound lot.  Counsel Smith also failed to cross-examine David Herbert as to the color of blue shirt that he saw the unidentified individual wearing.  [243-1] at 18.

With respect to Ground Six, Sterling's contention that Herbert and Caston described different "blue" shirts and that his counsel should have focused on this inconsistency during cross-examination is no basis for

relief.  First, Herbert and Caston saw Sterling at different times of day and in different locations.   Second, Herbert described a "blue pull-over sweatshirt," [201] at 72, and Caston described "maybe a blue – light blue shirt" [201] at 166.  These descriptions are not necessarily inconsistent. And, in any event, this "inconsistency" does not render the result of Sterling's trial unreliable.  Sterling's attorney did not act incompetently by leaving this "inconsistency" out of his cross-examination, and Sterling was not prejudiced, particularly where Sterling's counsel focused his attention and argument on the far more significant fact that Herbert had never positively identified Sterling as the man he saw get off the tow truck and walk out of the Smyrna Police impound lot.

> Ground Seven:  During trial Counsel Smith provided ineffective assistance for failure to use the FBI 302 Report and the suppression hearing testimony to discredit David Herbert concerning the fact that Sterling did not fit the description of the individual he saw in the impound lot.  [243-1] at 21.

Sterling argues in his Ground Seven that his counsel should have cross-examined Herbert about an "inconsistency" between his description of Sterling to the FBI as a black male approximately 5'8" tall, when Sterling actually stands 5'5" inches tall, and Herbert's description of Sterling during a suppression hearing as "dark" skinned, when Sterling describes himself as

24

"light" skinned.  These arguments are frivolous.  Sterling's counsel did not act incompetently, and Sterling was not prejudiced, when counsel focused on the more significant fact that Herbert never directly identified Sterling as the man he saw in the Smyrna Police impound lot.[1]

> Ground Eight:   During appeal Counsel Smith provided ineffective assistance for failure to argue that the evidence was insufficient to sustain a conviction after having preserved the issue in his Rule 29 motion during trial.  [243-1] at 24.

Although Sterling's counsel did not raise on appeal a sufficiency of the evidence claim, there is no reasonable question that the Eleventh Circuit would have rejected such a claim.  In the context of deciding that Judge Pannell appropriately permitted the introduction into evidence of Brumfield and Sterling's 1995 Western District of Oklahoma convictions for bank robbery and related crimes, the Eleventh Circuit stated:

> Assuming arguendo that this particular evidence was overly prejudicial as to Sterling, despite the limiting instruction given to the jury, we find that it was harmless.  There was otherwise overwhelming evidence of guilt to support Sterling's conviction,

---

[1]  There can be little doubt that the outcome of this case would have hinged on Herbert's testimony had he been asked to make an in-court identification of Sterling as the man he saw in the Smyrna Police impound lot.  A negative or equivocal answer would likely have resulted in an acquittal.  But, as the Eleventh Circuit recounted on direct appeal:  "The judge noted that Sterling likely was refusing to come to the courtroom to avoid identification by a witness, a concern that Sterling had expressed at a pretrial hearing."  *Sterling*, 738 F.3d at 233.

> including the physical evidence found in the vehicle, the
> eyewitness' descriptions, and Sterling's unexplained behavior.

*Sterling*, 738 F.3d at 239.  Sterling's counsel did not act incompetently by

omitting a meritless argument on appeal, and Sterling was not prejudiced.

> Ground Nine:  During trial Counsel Smith provided ineffective
> assistance for failure to cross-examine James Kenna Ferrell
> (a/k/a "Ken Ferrell") as to whether or not did Sterling even
> know that an arrest warrant was out for him, did Ken Ferrell
> contact Sterling to inform him of an arrest warrant, and
> whether or not did Sterling try to flee after being informed of an
> arrest warrant.  [243-1] at 30.

Sterling contends in Ground Nine that testimony that he was arrested

by three United States Marshals during a visit with his probation officer in

the Southern District of Mississippi unfairly "left an inference upon the

minds of the jury that STERLING was a fugitive on the run."  [243-1] at 30.

Sterling asserts that his counsel should have clarified on cross-examination

of his probation officer that Sterling "did not know that a warrant was out

for his arrest."  Id. at 31.  This is a specious argument.

First, far more damning to Sterling than his probation officer's

testimony was his own admission to his cousin—made *before* stories about

the 888 Concord Road Regions Bank branch robbery were widely-

published—that:  "They're trying to say I did something wrong.  I might be

in trouble, or something like that."  [201] at 171.  Second, Sterling's

26

probation officer was not competent, in any event, to testify to whether Sterling "knew" that an warrant for his arrest had been issued.

Sterling's counsel did not act incompetently when he did not pursue the line of examination Sterling now proposes in his § 2255 motion, and Sterling was not prejudiced.

> Ground Ten:  During pre-trial and trial Counsel Smith provided ineffective assistance for failure to investigate and call alibi witness to testify in Sterling's defense.  [243-1] at 33.

Sterling contends in his Ground Ten that his counsel should have called an alibi witness to testify that on January 14, 2010, he was in Mississippi, not Georgia.  This argument is also specious.

First, Sterling has neither named his alibi witness, nor provided an affidavit from that witness outlining his/her anticipated testimony.  Seven years after the armed robbery occurred, the substance of Sterling's "alibi" remains a near-complete mystery.

Second, there was substantial evidence presented at trial from Hanford that Sterling was in Atlanta on the morning of the robbery and from Caston that Sterling was in Smyrna on the afternoon of the robbery.  Both of these witnesses were either well-acquainted with or related to Sterling, and Sterling has offered nothing to suggest they were mistaken in

testifying that they each saw and spent time with him in the Atlanta-area on January 14, 2010, shortly before and shortly after the bank robbery.

And, third, in 2011, when the government requested that Sterling provide the name(s) of any alibi witness(es), *see* [101]; *see also* [108], he declined to respond.

Sterling's counsel did not act incompetently by declining to offer an unsubstantiated (and possibly perjured) alibi defense, and Sterling was not prejudiced.

> **Ground Eleven:**   **During trial and appeal Counsel Smith provided ineffective assistance for failure to object and argue that Sterling was denied his right to testify.  [243-1] at 35.**

Sterling's contention that he was denied his right to testify is contradicted by the record in this case.  *See* [202] at 120-23.  Indeed, the Eleventh Circuit found on direct appeal that:  "[a]fter the government rested, the judge visited Sterling again [and] advised him of his right to testify and present evidence, but Sterling remained non-responsive." *Sterling*, 738 F.3d at 233-34.  Any objection or appeal arguing that Sterling was denied his right to testify would have been meritless.  Sterling's counsel did not act incompetently, and Sterling was not prejudiced.

> **Ground Twelve:**   **During trial Counsel Smith provided ineffective assistance for failure to cross-examine Smyrna Police**

Officer[]s Reginald Davis [and] David Maroney and forensic specialist[s] Larry Wood and Rose Hansford concerning whether or not there was any red dye stains on the seat of the Silver Dodge on 1/14/10, the day of the bank robbery.  [243-1] at 38.

Sterling raises yet another specious argument in Ground Twelve.  At trial, Hansford testified that there was no red stain on the rear seat of the Dodge Stratus when she drove it in January 2010, before the bank robbery, but that she found a red stain after the car was returned to her from the Smyrna Police impound lot.  Sterling now contends that because the FBI did not obtain Hansford's consent to take samples from the rear seat stain until February 5, 2010, "it was not there on 1/14/10, the day of the bank robbery; nor was it there within 21 days of the bank robbery."  *See* [243-1] at 40.  The illogic of this argument is self-apparent.  The date on which the stain on the back seat was swabbed is not necessarily the first date on which the stain was present.

Sterling's counsel was not incompetent for declining to make a meritless argument, and Sterling was not prejudiced.

Ground Thirteen:  During pretrial, trial and appeal, Counsel Smith provided ineffective assistance for failure to suppress or object to the admission of the Silver Bryco Jennings 9mm handgun into evidence, as such handgun did not connect to the bank robbery, bolstered the prosecution's case, misrepresented the evidence of the case, was highly prejudicial to Sterling, and

29

should have been inadmissible in the trial, not mentioned during opening statements, nor closing arguments.  [243-1] at 42.

Like Brumfield, Sterling points to the inconsistency between the *state* warrant issued on January 14, 2010, identifying the handgun used in the bank robbery as a Lorcin 9mm and the *federal* indictment identifying the handgun as a Bryco Arms, Jennings 9mm.  Although the government has offered no explanation in its Responses for this discrepancy, it is readily apparent from the Smyrna Police Department's Property and Evidence Record memorializing the items seized when the Dodge Stratus was searched on January 14, 2010, that the handgun recovered from the trunk was a "Jennings 9mm pistol w/ magazine (loaded)."  [234] at 31.  It is thus abundantly clear that the gun seized from the Dodge Stratus on January 14, 2010, is the same gun that was identified in the later federal indictment and later offered by the government into evidence at trial.

In any event, Brumfield and Sterling were able to argue that Bryco Arms, Jennings 9mm was not used in the bank robbery.  The government was able to argue the opposite.  And this is what they did.

Sterling's counsel was not incompetent for failing to argue that the gun seized from the Dodge Stratus should have been suppressed or excluded as evidence at trial, and Sterling was not prejudiced.

> **Ground Fourteen:** During pretrial, trial, and appeal, Counsel Smith provided ineffective assistance for stipulating to the admission of the nature of Sterling's 1995 bank robbery conviction, when Sterling did not testify and was repeatedly mentioned during closing argument and thus improperly influenced the jury and for failure to argue on appeal that the Court conceded that the probative value was substantially outweighed by undue prejudice.  [243-1] at 45.

Sterling contends in Ground Fourteen that his counsel should have stipulated only that he was a former felon, not that he had been convicted of armed bank robbery.  This might have been true if Sterling's criminal history were being introduced only to establish that he was a former felon and thus prohibited from possessing a firearm, but Judge Pannell ruled that the defendants' criminal records could be introduced for the additional purposes permitted under Federal Rule of Evidence 404(b).  Indeed, both defendants challenged this evidentiary ruling in their direct appeals, and the Eleventh Circuit held that this evidence was properly admitted.  *See Sterling*, 738 F.3d at 237-39.

Because Sterling's counsel, in fact, had objected to the introduction of this evidence both before trial and on appeal, and because this issue was

resolved on direct appeal, Sterling may not reargue it now. *See Nyhuis*, 211 F.3d at 1343.

The government's references to these convictions were, as the Eleventh Circuit noted, subject to a limiting instruction that Sterling's counsel requested, and "we assume that the jury properly followed the court's instructions." *Sterling*, 738 F.3d at 237.

Finally, to the extent that a pretrial hearing transcript includes a typographical error or records a misstatement that "the probative value is substantially outweighed by the undue prejudice," [159] at 11, the record as a whole is abundantly clear that Judge Pannell ruled that he would "allow [the government] to present [the 1995 convictions] as 404(b) evidence," *id.*, that this is what occurred, and that the Eleventh Circuit affirmed this ruling, *see Sterling*, 738 F.3d at 237-39.

Sterling's counsel did not act incompetently, and Sterling was not prejudiced.

> Ground Fifteen:   During trial Counsel Smith provided ineffective assistance for failure to object and request a mistrial due to the prosecution committed prosecutorial misconduct through the trial; nor did Counsel Smith argue such on appeal. [243-1] at 50.

In Ground Fifteen, Sterling contends that he was subjected to prosecutorial misconduct because the government bolstered witness testimony and misstated key evidence.   Absent improper remarks that "prejudicially affect[] the defendant's substantial rights," however, there is no prosecutorial misconduct.  *United States v. Azmat*, 805 F.3d 1018, 1044 (11th Cir. 2015).  The government's statements and arguments with respect to Sterling were all well within the range that is permissible.

Only one remark requires brief discussion.  Sterling is correct that the government twice stated incorrectly during closing argument that he was arrested in the Dodge Stratus.  *See* [243-1] at 60.  But this misstatement– which does not appear to have had a malign purpose–is trivial, and, in any event, the jurors were specifically instructed that "they should consider only the evidence that the Court's admitted during the trial of the case [and that] anything the lawyers say is not evidence and is not binding upon [them]." [203] at 5.  As with the limiting instruction given with respect to the 1995 Western District of Oklahoma convictions, we can assume the jury followed this instruction, as well.

Had Sterling's counsel moved for a mistrial based on prosecutorial misconduct, that motion would have been denied. Sterling's counsel did not act incompetently, and Sterling was not prejudiced.

> Ground Sixteen:   The accumulation of errors in this case violated Sterling's right to due process.  [243-1] at 67.[2]

Sterling's Ground Sixteen is meritless.  "[T]here can be no cumulative error when there are no individual errors."  *Azmat*, 805 F.3d at 1045.  For the reasons already discussed above, there were no individual errors in Sterling's counsel's performance that amounted to ineffective assistance.

> Ground Seventeen:  This Court's authority to fashion a sentence consistent with respect to history and characteristics of the defendant.  [243-1] at 74.

Sterling's Ground Seventeen lies outside the scope of claims appropriately brought in a § 2255 proceeding.  *See* 28 U.S.C. § 2255.  In any event, Judge Pannell specifically considered Sterling's history and characteristics in fashioning his sentence.  *See* [195] at 26-27.  Thus, this ground for relief is also meritless.

---

[2]  Sterling included a "Ground Sixteen(A)" in his § 2255 motion, *see* [243-1] at 73, but he concedes in his Reply that this ground does not warrant relief, *see* [261] at 42-45.

34

## III.   <u>**CONCLUSION**</u>

For the reasons stated above, Brumfield and Sterling's § 2255 motions should be denied.

Furthermore, because neither Brumfield nor Sterling meets the requisite standard, neither is entitled to a Certificate of Appealability.  *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (requiring a two-part showing (1) "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," *and* (2) "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling"); *see also Spencer v. United States*, 773 F.3d 1132, 1138 (11th Cir. 2014) (en banc) (holding that the *Slack v. McDaniel* standard will be strictly applied prospectively).

No evidentiary hearing is required because "the motion[s] and the files and the records of the case[s] conclusively show that the prisoner[s] [are] entitled to no relief . . . .  28 U.S.C. § 2255(b).  *See also Holmes v. United States*, 826 F.3d 1545, 1553 (11th Cir. 1989) ("this rule does not require that the district court hold an evidentiary hearing every time a § 2255 petitioner simply asserts a claim of ineffective assistance of counsel").

I **DIRECT** the Clerk to terminate the referral of these cases to me.

**SO RECOMMENDED AND DIRECTED**, this 17th day of August, 2017.

CATHERINE M. SALINAS
UNITED STATES MAGISTRATE JUDGE